**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| TRIUMPH ACTUATION SYSTEMS – YAKIMA, LLC, a Delaware limited liability company, and TRIUMPH GROUP, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>CIRRUS DESIGN CORPORATION, a Wisconsin corporation,<br><br>Defendant. | Case No. _____<br><br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Triumph Actuation Systems – Yakima, LLC ("Triumph") and Triumph Group, Inc. ("Triumph Parent") bring this complaint against Cirrus Design Corporation ("Cirrus") for breach of contract, copyright infringement, and violation of the Digital Millenium Copyright Act.

## NATURE OF ACTION

1.      This is an action for breach of contract, copyright infringement, and violation of the Digital Millenium Copyright Act related to Triumph's development of detailed schematic diagrams for Cirrus's aircraft landing gear systems and Cirrus's subsequent unauthorized use of those confidential and proprietary schematics.

## THE PARTIES

2.      Triumph Actuation Systems – Yakima, LLC is a limited liability company duly organized and existing under the laws of the State of Delaware with its principal place of business at 2720 W. Washington Ave., Yakima, WA 98903. Triumph Actuation Systems – Yakima, LLC's sole member is The Triumph Group Operations, Inc., a corporation duly organized and existing

1

under the laws of the State of Delaware with its principal place of business at 555 E. Lancaster Avenue, Radnor, PA 19087.

3.     Triumph Group, Inc. is a publicly traded corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located at 555 E. Lancaster Avenue, Radnor, PA 19087.

4.     Cirrus is a corporation duly organized and existing under the laws of the State of Wisconsin with its principal place of business at 4515 Taylor Circle, Duluth, Minnesota 55811.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because this action is for, without limitation, copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*., and violation of the Digital Millenium Copyright Act arising under 17 U.S.C. § 1202(b). This Court has supplemental jurisdiction over the state-law claim in this action under 28 U.S.C. § 1367(a) because the state-law claim is so related to the federal claim that it forms part of the same case or controversy and derives from a common nucleus of operative facts.

6.     This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because it is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     This Court has personal jurisdiction over Cirrus because it does substantial business in Minnesota, has a principal place of business in Minnesota, and is registered as a Minnesota business entity.

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391. Cirrus resides in this District within the meaning of 28 U.S.C. § 1391(c) because it is subject to personal jurisdiction here.

## FACTUAL BACKGROUND

9.      Triumph Actuation Systems – Yakima, LLC is a wholly-owned, indirect subsidiary of Triumph Parent, which is a global leader in the aerospace industry and, through its operating subsidiaries, offers design, production, and service for aircraft systems, components, and accessories, including but not limited to actuation, fuel systems, hydraulics, gears solutions, and maintenance, repair, and overhaul services. Since its founding in 1993, Triumph Parent has become a world-renowned aerospace manufacturer, having generated more than $1 billion in revenue in 2024 alone. Triumph Actuation Systems – Yakima, LLC is an industry leader in the design, development, and manufacture of aircraft actuation products and services, including landing gear systems, nose wheel steering systems, hydraulic fuses, flight control actuation, and hold back bars for both military and commercial aircraft.

10.     Cirrus is a company that designs, manufactures, and sells small aircrafts.

### *The SF50 Program*

11.     On July 16, 2007, Triumph's predecessor in interest Triumph Actuation Systems – Connecticut, LLC d/b/a Triumph Aerospace Systems – Seattle ("Triumph – Seattle") and Cirrus entered into a Development Agreement to design, develop, certify, manufacture, and support a new light single-engine Fanjet aircraft (the "Cirrus SF50 Jet"). Cirrus sought to certify the Cirrus SF50 Jet using landing gear created and developed by Triumph – Seattle (the "SF50 Program"). Specifically, Triumph – Seattle and Cirrus agreed that the SF50 Program would consist of creating physical, functional, structural, and performance characteristics of the landing gear legs,

3

extension/retraction system, alternate extension system, position indication system, nose steering system, gear door system, and wheel/brake interface. Triumph – Seattle agreed to develop specifications and schematics for its landing gear configuration based on requirements and information provided by Cirrus.

12.     The Development Agreement made clear that Triumph – Seattle would retain all design and ownership rights in the specifications and schematics. The Development Agreement stated, in relevant part, that "CIRRUS is not funding TRIUMPH'S product development and TRIUMPH will retain all design ownership rights. TRIUMPH will retain all design ownership rights for all design and analysis pertaining to the landing gear structural mechanisms and hydraulic architecture."

13.     As part of the Development Agreement, Triumph – Seattle and Cirrus collaboratively worked on the initial stages of the SF50 Program, during which Triumph – Seattle provided Cirrus with solid models and drawings of the top assemblies of the Cirrus SF50 Jet landing gear system.

14.     Due to funding issues, the SF50 Program went on hold between 2009–2012. Triumph – Seattle invested $2,400,000 to develop the SF50 Program under the assumption that it would recover its investment through landing gear sales beginning in 2010. The Development Agreement was out of date in the fall of 2008 because the SF50 Program schedule, statement of work, hardware deliverables, and the landing gear technical specification all significantly changed.

15.     Over the subsequent years, Triumph – Seattle and Cirrus attempted to negotiate terms to continue the SF50 Program. Triumph – Seattle attempted to renegotiate the terms of the Development Agreement in good faith but Cirrus refused to agree to new terms. Triumph – Seattle thereafter invested an additional $1,600,000 into the design of a new landing gear specification

during this "good faith" part of the SF50 Program, bringing Triumph – Seattle's total investment to approximately $4,000,000.

16.     Due to the long delay and the added cost associated with designing two landing gear systems, Triumph – Seattle was no longer willing to absorb additional non-recurring costs for completing the landing gear design and qualification.

17.     On November 19, 2012, Triumph – Seattle notified Cirrus that it was terminating the Development Agreement.

18.     Although the Development Agreement was terminated, Triumph – Seattle continued development for Cirrus in the subsequent years, during which the parties continued negotiating terms for a new agreement. Triumph – Seattle thereafter transferred its SF50 landing gear designs and data to its sister company Triumph.

19.     On June 22, 2017, Triumph Parent and Cirrus entered into a Mutual Confidentiality Agreement, and on the same day Triumph and Cirrus entered into a Long Term Supply Agreement concerning the SF50 Program. Paragraph 1.1 of the Mutual Confidentiality Agreement defines the Confidential Information protected thereunder to include information belonging to a party's "Affiliates", which for Triumph Parent includes Triumph. Paragraph 28.0 of the Long Term Supply Agreement also incorporated by reference the terms of the Mutual Confidentiality Agreement into the Long Term Agreement as an agreement "between the Parties".

20.     Paragraph 2 of the Mutual Confidential Agreement states as follows:

Confidentiality Obligations. The Receiving Party shall protect all Confidential Information against unauthorized access, use or disclosure and shall do so with at least the same degree of care used to protect its own Confidential Information of a similar nature, but with no less than reasonable care. The Receiving Party shall access and use the Confidential Information of the Disclosing Party solely for the limited purpose of: (a) engaging in discussions with the Disclosing Party; and (b) taking those actions expressly authorized in writing by the Disclosing Party in furtherance of the Purpose. Except as expressly permitted herein, the Receiving Party shall not, nor shall it permit any third party to, access,

use, or disclose the Confidential Information of the Disclosing Party for any other purpose, whether for the Receiving Party's own benefit or the benefit of any third party, without the prior written authorization of Disclosing Party in each instance. The Receiving Party may disclose Confidential Information only to (i) those officers and employees of the Receiving Party and/or its Affiliates (each a "Representative") who have a need to know the Confidential Information for the Purpose, but only after the Representative is informed that the information is confidential and may not be disclosed to anyone and only if the Representative is legally bound by written confidentiality obligations; and (ii) where Cirrus is the Receiving Party, Cirrus may disclose the Disclosing Party's Confidential Information to the United States Government if and to the limited extent required for Cirrus to adhere to its regulatory and certification requirements. Any unauthorized access to, use or disclosure of Confidential Information by a Representative shall be deemed a direct breach of this Agreement by the Receiving Party, allowing the Disclosing Party to recover damages and seek injunctive relief directly against the Receiving Party as though such breach was committed directly by the Receiving Party.

21.     Paragraph 9 of the Mutual Confidential Agreement states as follows:

Ownership; Rights not Conveyed. The parties hereto agree that any intellectual property or Confidential Information brought into this Agreement by Cirrus will remain the property of Cirrus; and that any intellectual property or Confidential Information brought into this Agreement by Company will remain the property of Company. No express or implied license, right, title or interest under any intellectual property rights of the Disclosing Party is granted or conveyed to the Receiving Party, nor shall this Agreement grant either Party any rights in or to the other Party's Confidential Information, except the limited right to review such Confidential Information in connection with the Purpose. Confidential Information shall at all times remain the property of Disclosing Party.

A true and correct copy of the signed Mutual Confidentiality Agreement is attached as **Exhibit A**.

22.     As part of the continued SF50 Program, Triumph created detailed schematic diagrams for, among other things, the main landing gear and the nose landing gear systems, including drawing numbers TS00932-6141-01, TS00932-6151-01, TS00932-6152-01, TS00932-6161-01, TS00932-6162-01, TS00932-6164-03, TS00932-6175-02, TS00932-6313-01, TS00932-6321-01,  TS00932-7111-05,  TS00932-7121-04,  TS00932-7122-03,  and  TS00932-7511-02 (collectively, the "SF50 Schematics").

23.     The SF50 Schematics contain original, creative works in which Triumph owns a protectable copyright interest. For example, the SF50 Schematics contain unique arrangements of

the design specifications for the landing gear system that allow Triumph's engineers to easily review and understand the specific components and their respective requirements. Triumph creatively selected the positioning and orientation of the components displayed in the SF50 Schematics to provide an appealing and comprehensible presentation of the landing gear system and technology. Indeed, the SF50 Schematics could have been created thousands of different ways.

24.     Triumph maintains federal copyright registrations for its SF50 Schematics, including U.S. Copyright Reg. Nos. VAu 1-545-773 and VAu 1-547-629.

25.     Triumph marks its copyrighted SF50 Schematics with the legend "Proprietary and Confidential," identifies Triumph as the owner of the drawings, and identifies the author of the drawings, as shown below.

PROPRIETARY AND CONFIDENTIAL

INFORMATION AND DESIGN DATA DISCLOSED HEREIN IS THE PROPRIETARY AND CONFIDENTIAL PROPERTY OF THE TRIUMPH GROUP AND/OR IT'S CLIENTS, AND ALL PATENT, PROPRIETARY, DESIGN, MANUFACTURING, PROCESSING, REPRODUCTION, AND SALES RIGHTS THERETO ARE RESERVED, EXCEPT TO THE EXTENT THAT RIGHTS ARE EXPRESSLY GRANTED BY WRITTEN AGREEMENT. DUPLICATION, DISCLOSURE OR USE OF THE INFORMATION HEREIN, OR ANY PART HEREOF IS FORBIDDEN WITHOUT THE EXPRESS WRITTEN PERMISSION OF THE TRIUMPH GROUP. POSSESSION HEREOF DOES NOT IMPLY ANY INTENT BY THE TRIUMPH GROUP TO MAKE THIS DOCUMENT AVAILABLE TO OTHERS OR TO THE GENERAL PUBLIC, NOR TO ABANDON ANY OF ITS PROPRIETARY RIGHTS HEREIN. IF CONSENT IS GIVEN IN WHOLE OR IN PART TO REPRODUCE THIS DOCUMENT, THIS NOTICE SHALL APPEAR ON ANY SUCH REPRODUCTION.

26.     Triumph provided Cirrus with the SF50 Schematics strictly for the SF50 Program pursuant to the terms of the Mutual Confidentiality Agreement.

### Cirrus's SF5X Request for Proposal

27.     On February 28, 2024, Cirrus sent Triumph landing gear system drawings as part of a new request for proposal for Cirrus's "build to print" landing gear components for the next generation single-engine jet aircraft (the "SF5X Schematics"). The SF5X Schematics are unrelated to the SF50 Program.

28.     The SF5X Schematics included drawings that are nearly identical to the SF50 Schematics. For example, the SF5X Schematics included drawings that are nearly identical to Triumph's drawings in the SF50 Schematics for the main landing gear left side fitting, main landing gear trailing link, the main landing gear cylinder shock strut, the nose landing gear drag brace, the nose landing gear shock strut orifice tube, the nose landing gear drag link, the nose landing gear fork, the nose landing gear metering pin, the nose landing gear oleo piston, the nose landing gear recoil ring, the nose landing gear torque links, and the nose landing gear oleo orifice. A chart comparing these nearly identical configurations is attached as **Exhibit B**.

29.     On information and belief, Cirrus accessed, used, and/or disclosed the SF50 Schematics to create the SF5X Schematics, in violation of the Mutual Confidentiality Agreement.

30.     The Mutual Confidentiality Agreement prohibits Cirrus from accessing, using, or disclosing the SF50 Schematics outside the SF50 Program. The Mutual Confidentiality Agreement states, in part, that Cirrus "shall not, nor shall it permit any third party to, access, use, or disclose the Confidential Information of the Disclosing Party for any other purpose, whether for the Receiving Party's own benefit or the benefit of any third party, without the prior written authorization of Disclosing Party in each instance."

31.     Cirrus did not seek Triumph's authorization to access, use, and/or disclose the SF50 Schematics to create the SF5X Schematics, in violation of the Mutual Confidentiality Agreement.

32.     Additionally, on information and belief, Cirrus without authorization removed from the SF50 Schematics the information identifying the works, the identification of Triumph as the author of the works, the identification of Triumph as the copyright owner of the works, and terms and conditions for use of the works.

## COUNT I
## Breach of Contract

33.    Plaintiffs hereby reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

34.    On June 22, 2017, Triumph Parent and Cirrus entered into the Mutual Confidentiality Agreement.

35.    The Mutual Confidentiality Agreement is a valid and enforceable contract governed by Minnesota law.

36.    Paragraph 2 of the Mutual Confidentiality Agreement states that Cirrus "shall not, nor shall it permit any third party to, access, use, or disclose the Confidential Information of the Disclosing Party for any other purpose, whether for the Receiving Party's own benefit or the benefit of any third party, without the prior written authorization of Disclosing Party in each instance."

37.    The SF50 Schematics are "Confidential Information" within the meaning of the Mutual Confidentiality Agreement.

38.    On information and belief, Cirrus engaged in the unauthorized access to, use of, and/or disclosure of the SF50 Schematics for a purpose beyond the scope of the Mutual Confidentiality Agreement, including but not limited to accessing, using, and/or disclosing the SF50 Schematics for the development of the SF5X Schematics.

39.    Cirrus's actions described above constitute material breaches of the Mutual Confidentiality Agreement.

40.    As a result of Cirrus' breach of the Mutual Confidentiality Agreement, Triumph Parent has suffered damages in an amount to be determined at trial but, in any event, exceeding $75,000, exclusive of costs and interest.

## COUNT II
### Copyright Infringement (17 U.S.C. § 501)

41.    Plaintiffs hereby reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

42.    Triumph is the sole owner of all right, title, and interest in and to the SF50 Schematics with the full and exclusive right to bring suit to enforce its copyright and to recover for infringement of the same.

43.    Cirrus's unauthorized creation of the SF5X Schematics constitutes infringement of the copyrighted SF50 Schematics.

44.    Cirrus acted willfully in this regard, or at a minimum, with willful blindness to, or in reckless disregard of, Triumph's rights to the SF50 Schematics.

45.    As a result of Cirrus's unlawful acts, Triumph is entitled to recover its actual damages and Cirrus's profits attributable to the infringement.

46.    Triumph is further entitled to injunctive relief restraining Cirrus and its officers, agents, employees, and all persons acting in concert with them, from engaging in any further such acts in violation of Triumph's copyrights.

## COUNT III
### Removal of Copyright Management Information
### in Violation of the Digital Millenium Copyright Act (17 U.S.C. § 1202(b))

47.    Triumph hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48.    Triumph prominently stamped its copyrighted SF50 Schematics with the title and information identifying the work, with Triumph identified as the author of the work, with Triumph identified as the copyright owner of the work, and with terms and conditions for use of the work.

This information constitutes "copyright management information" pursuant to 17 U.S.C. § 1202(c).

49.     On information and belief, Cirrus removed or altered this copyright management information to create the SF5X Schematics with the intent to induce, enable, facilitate, or conceal infringement of Triumph's rights under the Copyright Act, in violation of 17 U.S.C. § 1202(b).

50.     Cirrus's omission of valid copyright management information was made without Triumph's knowledge or consent.

51.     On information and belief, Cirrus's removal of copyright management information was done knowingly, intentionally, and with the intent to conceal its infringement of Triumph's copyrights in the SF50 Schematics.

52.     Under 17 U.S.C. §1203(c)(2), Cirrus is liable to Triumph for the actual damages it incurred as a result of its infringement, as well as any profits that Cirrus has derived, whether directly or indirectly, that are attributable to such infringement.

53.     Alternatively, Cirrus is liable to Triumph for the maximum amount of statutory damages under 17 U.S.C. §1203(c)(3) ($25,000 per violation).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court provide the following relief against Cirrus:

1.     An entry of judgment holding that Cirrus breached the Mutual Confidentiality Agreement;

2.     An award of damages for Cirrus's breach of the Mutual Confidentiality Agreement;

3.     An order permanently and preliminarily enjoining and restraining Cirrus, its related companies, its parents, officers, agents, representatives, employees, contractors, successors, and assigns, and all others acting in active concert or participation with it, from:

a.      infringing, directly or contributorily, any copyrights of Triumph in any manner, and from copying, exhibiting, transmitting, displaying, distributing, or preparing derivative works from any of the copyrighted material in any past, present, or future variation of the copyrighted works;

b.      advertising, marketing, distributing, offering for sale, or selling the SF50 Schematics and SF5X Schematics or depictions substantially similar to the SF50 Schematics and SF5X Schematics, or otherwise infringing Triumph's intellectual property;

c.      advertising, marketing, distributing, offering for sale, or selling the SF50 Schematics and SF5X Schematics without Triumph's copyright management information or depictions substantially similar to the SF50 Schematics and SF5X Schematics without Triumph's copyright management information, or otherwise infringing Triumph's intellectual property;

d.      assisting, aiding, or abetting any other person or business entity engaged in or performing any of the activities referred to in foregoing subsections;

4.      Enter an order pursuant to 17 U.S.C. § 503 impounding all physical and digital records that infringe Triumph's copyrights in the SF50 Schematics and any related items, including business records, that are in Cirrus's possession or under its control;

5.      Enter an order requiring Cirrus to pay to Plaintiffs such actual damages as it has sustained; and

6.      Enter an order awarding Plaintiffs such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, by counsel, respectfully request a jury trial for all issues deemed triable.

Dated:  April 9, 2025

By: /s/ *Matthew R. McBride*
        Matthew R. McBride (#0261981)
        Quin C. Seiler (#0396699)

Winthrop & Weinstine, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
612-604-6400
mmcbride@winthrop.com
qseiler@winthrop.com

Richard L. Brophy (*pro hac vice forthcoming*)
Armstrong Teasdale LLP
7700 Forsyth Blvd.
Suite 1800
St. Louis, MO  63105
314-621-5070
rbrophy@atllp.com
Michael W. Carwin (*pro hac vice forthcoming*)
Armstrong Teasdale LLP
100 North Riverside Plaza
Chicago, IL 60606
312-419-6900
mcarwin@atllp.com

*Attorneys for Plaintiffs Triumph Actuation*
*Systems – Yakima, LLC and Triumph*
*Group, Inc.*

## CERTIFICATE OF SERVICE

I, Matthew R. McBride, hereby certify that on April 9, 2025, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Matthew R. McBride

31357881v2